## A07A1130. MORTON v. WELLSTAR HEALTH SYSTEM, INC.
### (653 SE2d 756)

MILLER, Judge.

In this tort action, Ann Morton asserted claims against Wellstar Health System, Inc., d/b/a Wellstar Cobb Hospital ("Wellstar") for ordinary and professional negligence, medical battery and related attorney fees, and punitive damages. She now appeals from a grant of summary judgment entered in favor of Wellstar solely on her claims for medical battery and related attorney fees. Morton asserts as error the trial court's finding that she failed to allege facts sufficient to support a claim for battery, and further argues that in reaching this conclusion, the trial court applied the incorrect law as to the intent element of her battery claim. Morton also appeals the trial court's denial of her motion for summary judgment on these claims, arguing she was entitled to the same as a matter of law. Discerning no error, we affirm.

"On appeal from a grant of summary judgment, we conduct a de novo review of the evidence to determine if there exists a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, entitle the movant to judgment as a matter of law. [Cit.]" *Wachovia Bank v. Moody Bible Institute of Chicago*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the evidence shows that Morton's mother, Clarice Jackson, entered Wellstar on March 23, 2002 with a fractured hip. At the time of her mother's admittance, Morton signed a consent form on her behalf (hereinafter the "Consent") that provided, in relevant part:

> **AUTHORIZATION OF TREATMENT**: I do hereby consent to medical or hospital care encompassing diagnostic procedures and medical treatment . . . as may be ordered by physicians, employees or agents responsible for such medical or hospital care. I further consent to treatment by authorized employees or agents of [Wellstar] who are assigned to my . . . care.

On March 24, 2002, Jackson underwent surgery to repair her hip. Her physician's post-operative instructions stated that Jackson was to be given clear liquids immediately after surgery and, if she did not experience nausea, the nursing staff should "advance [her] diet as

tolerated." Jackson remained on a clear liquid diet until March 26, 2002, at which time the nursing staff advanced her to a diet of pureed foods.

Because she required assistance to eat, Jackson was fed by a certified nursing care associate ("NCA") employed by Wellstar. On March 26, 2002, Jackson tolerated the pureed diet, and the following morning the NCA fed Jackson scrambled eggs as part of that diet.[1] Apparently unable to swallow the eggs, Jackson aspirated on them and suffered cardiopulmonary arrest. Although the hospital staff was able to resuscitate Jackson, she suffered brain damage due to lack of oxygen and died on April 2, 2002.

Morton, as Ms. Jackson's daughter and in her capacity as executrix of her mother's estate, filed suit against Wellstar, alleging that her mother's death resulted from the professional and ordinary negligence of the hospital and its employees. Following discovery, Morton amended her complaint to assert a claim of battery against Wellstar and to request both punitive damages and attorney fees resulting from this intentional tort. The battery claim was premised on the allegation that the feeding of scrambled eggs to Ms. Jackson was in violation of her physician's orders and therefore fell outside the scope of the Consent.

Wellstar moved for summary judgment on Morton's claims for battery and attorney fees, arguing that the Consent allowed hospital staff to feed Ms. Jackson the eggs. Thus, because the contact was consensual, there could be no battery. Morton filed a counter-motion for summary judgment on these claims, asserting that the undisputed facts entitled her to judgment as a matter of law.

The trial court granted Wellstar's motion and denied Morton's, finding that the facts alleged in support of the battery claim did not establish conduct falling outside the scope of the Consent. This appeal followed.

1. Under Georgia law, a plaintiff may recover for a medical battery by establishing either: (i) that there was a lack of consent to the procedure performed (*Joiner v. Lee*, 197 Ga. App. 754, 756 (1) (399 SE2d 516) (1990)); or (ii) that the treatment was at substantial variance with the consent granted (*Sood v. Smeigh*, 259 Ga. App. 490, 495 (2) (578 SE2d 158) (2003) (physical precedent only)[2]). This Court has made clear, however, that a plaintiff may not premise a claim for

---

[1] The testimony of record was that, under the relevant guidelines published for dieticians in Georgia, scrambled eggs as prepared by Wellstar were of such a consistency as to be considered part of a pureed diet.

[2] We note that while *Sood* is physical precedent only (see Court of Appeals Rule 33 (a)), it has been cited with approval and without qualification in *Canas v. Al-Jabi*, 282 Ga. App. 764, 788 (2) (639 SE2d 494) (2006), which serves as binding precedent.

medical battery on the assertion "[that] he . . . did not consent to the negligent performance of the medical procedure" otherwise covered by a valid consent, because such a rule "would transform every medical malpractice claim into a battery claim." *Bowers v. Lee*, 259 Ga. App. 382, 383 (1) (577 SE2d 9) (2003), overruled on other grounds, *Mateen v. Dicus*, 281 Ga. 455 (637 SE2d 377) (2006). See also *Upson County Hosp. v. Head*, 246 Ga. App. 386, 389 (1) (540 SE2d 626) (2000) (An action for professional negligence exists when the plaintiff's claim addresses "the propriety of a professional decision rather than . . . the efficacy of conduct in the carrying out of a decision previously made. . . .") (footnote omitted).

Here, Morton claims that the hospital's conduct exceeded the scope of the Consent because it did not comply with the orders of Ms. Jackson's physician, Dr. Olmedo. Those orders required that before feeding Ms. Jackson scrambled eggs, the nursing staff had to determine if she could tolerate that food. Morton reasons that this determination could not be made without a swallowing test, and in the absence of such a test, the feeding of the scrambled eggs did not constitute the medical treatment ordered, and therefore was not covered by the Consent.

The undisputed facts of record, however, do not support Morton's position. Rather, those facts show that only a physician could order a swallowing test and that Dr. Olmedo never ordered such a test. Instead, he instructed the nursing staff to advance Ms. Jackson's diet from liquids "as tolerated," and delegated to that staff the responsibility for determining what types of food she could tolerate.

The only inference to be drawn from these facts is that Dr. Olmedo gave orders allowing the nursing staff to determine what foods Ms. Jackson could tolerate without having a swallowing test performed — an inference supported by the deposition testimony of Morton's own expert, who testified that Ms. Jackson's diet was advanced pursuant to her doctor's orders.[3] Taken together with the fact that the nurses had determined that Ms. Jackson could tolerate a pureed diet, which included scrambled eggs as prepared by Wellstar, this inference leads to the conclusion that Ms. Jackson was fed the scrambled eggs pursuant to the orders of her physician. This conduct, therefore, was covered by the Consent, and it cannot give rise to a claim for medical battery. See *Prince v. Esposito*, 278 Ga. App. 310, 311 (1) (a) (628 SE2d 601) (2006) ("A patient who consents to a

---

[3] Morton's expert further testified that she did not question the conduct of Wellstar in feeding Ms. Jackson scrambled eggs. Rather, she believed that Wellstar had breached the applicable standard of care when it allowed a NCA, as opposed to a RN, to feed her the eggs, because a RN would have been able to determine the patient's swallowing capabilities and would have been prepared to respond if the patient started to choke.

medical touching . . . cannot sustain a battery claim.") (footnote omitted). Accordingly, we affirm the trial court's order granting summary judgment in favor of Wellstar on Morton's claim for battery as well as her related claim for attorney fees.

In reaching this result, however, we note, as did the trial court, that evidence of Dr. Olmedo's failure to order a swallowing test and evidence regarding the nursing staff's determinations as to the advancement of Ms. Jackson's diet, including the decision to include scrambled eggs in that diet, may be used at trial to support Morton's claims for ordinary and professional negligence. See *Upson County Hosp.*, supra, 246 Ga. App. at 389 (1).

2. In light of our holding in Division 1, supra, we need not address Morton's remaining claims of error as to (i) whether the trial court applied the incorrect law as to the intent element of her battery claim and (ii) whether she was entitled to summary judgment in her favor on such claim and her accompanying claim for attorney fees.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 18, 2007 —
RECONSIDERATION DENIED NOVEMBER 8, 2007 — 

*Kirschner & Venker, Andrew R. Kirschner*, for appellant.
*Green, Johnson & Landers, Henry D. Green, Jr., David A. Sapp*, for appellee.