PRESENT:  All the Justices

MATTHEW T. MAYR, ET AL.

OPINION BY
v.  Record No. 151985                    JUSTICE STEPHEN R. McCULLOUGH
                                                February 2, 2017

CATHERINE OSBORNE, ADMINISTRATOR
OF THE ESTATE OF MICHAEL J. OSBORNE


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

The surgeon in this case mistakenly fused the wrong level on Mr. Osborne's spine.

Instead of operating on level C5-C6, the surgeon operated on level C6-C7.  The issue we must

resolve is whether a plaintiff in such a situation can proceed on a theory of battery or whether the

law confines a plaintiff to recovery under a negligence theory.[1]  We conclude that the surgeon's

actions did not constitute a battery.  Accordingly, we reverse the judgment of the trial court.

---

[1] Specifically, the appellant raises the following two assignments of error:

> 1.  The trial court erred by denying Defendants' motions to strike the evidence, as a cause of action for the negligent performance of a consented to medical/surgical procedure, with no evidence of intentional tortious conduct, may not, as a matter of law, be maintained as a cause of action for an intentional tort of battery. The trial court further erred by denying Defendants' motions to strike the evidence because Plaintiff introduced no qualified medical expert testimony to prove a breach of a standard of care and proximate causation.

> 2.  The trial court erred by denying Defendants' motions to strike the evidence because a cause of action arising out of health care or professional services rendered, and which therefore falls within Virginia's Medical Malpractice Act, Va. Code § 8.01-581.1 et seq., may not be pleaded and pursued as "battery" or as any tort other than "medical malpractice."

BACKGROUND

In an effort to relieve back pain, Dr. Matthew T. Mayr performed a posterior cervical foraminotomy and fusion on Michael J. Osborne. The surgery targeted the C5-C6 level of Mr. Osborne's spine. The procedure called for the stabilization of level C5-6 by using bars connected to the spine with screws, as well as the insertion of a bone graft. Dr. Mayr performed the operation, and his operative report shows that he believed that he had operated on the C5-C6 level.

X-rays taken after the surgery revealed that Dr. Mayr had fused the wrong level. He had fused level C6-C7 instead of C5-C6. Dr. Mayr informed his patient of that fact. Dr. Mayr later performed a corrective surgery, removing the screws and bars at level C6-C7 and performing the surgery at the correct level.

Catherine Osborne, the wife of Michael Osborne and the administrator of his estate,[2] filed a complaint alleging Dr. Mayr was negligent and that he committed a battery. She later nonsuited her claim for negligence and proceeded to trial exclusively on her battery claim. Her theory at trial was that the surgery on the wrong level "went beyond the scope of the consent that he was given" and, therefore, constituted a battery.

At trial, Dr. Mayr testified that when he spoke with Mr. Osborne, he informed him that, among other risks of this surgery, there is a risk that the "hardware can be misplaced and that that may have to be revised down the road." Mrs. Osborne denied that she or her husband had received such information from Dr. Mayr. Dr. Mayr also presented expert testimony that operating at the wrong level is "a recognized complication" of this type of surgery.

---

[2] Mr. Osborne's death is unrelated to this case.

Dr. Mayr twice moved to strike, first at the close of the plaintiff's case, and then again at the close of all the evidence, arguing both times that while the facts revealed possible negligence, they did not establish a battery. He also argued that the plaintiff had failed, as required, to produce an expert to testify concerning the standard of care. At the conclusion of the bench trial, the court indicated it would take the motion to strike under advisement. The court received a memorandum in support of the motion to strike and made it part of the record. After a short recess, the court stated from the bench that it was entering judgment for the plaintiff and later entered a final order to that effect.

ANALYSIS

Dr. Mayr argues that to permit a claim for battery in circumstances like this one would impermissibly extend the scope of what constitutes a battery. He notes that he did not intentionally operate on the wrong level of his patient's spine, and contends that our cases recognizing a tort of battery in the medical setting are distinguishable.[3] For her part, the plaintiff argues that consent was given for surgery at the C5-C6 level, there was no consent for a surgery on the C6-C7 level, and, because the surgery exceeded the scope of consent, it constituted a battery.

---

[3] Osborne argues that the issue is procedurally defaulted because the trial court did not expressly rule on the motion to strike. Although the failure to obtain a ruling on a motion can foreclose appellate review, *see, e.g.*, *Fisher v. Commonwealth*, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993), here the trial court's award of damages to the plaintiff following two motions to strike necessarily constituted an implicit denial of the motions to strike. *See Murray v. Hadid*, 238 Va. 722, 728, 385 S.E.2d 898, 903 (1989). *See also Scialdone v. Commonwealth*, 279 Va. 422, 440, 689 S.E.2d 716, 726 (2010). We also reject the argument that the appellant did not raise below the argument made on appeal. Counsel made two motions to strike contending that this case should proceed in negligence, and that the plaintiff had not proven a battery. Accordingly, we resolve the issue on the merits.

I.        OUR PRECEDENT HAS NOT ANSWERED THE QUESTION AT ISSUE IN THIS CASE.

The plaintiff argues that this case is controlled by our prior decisions. We disagree. Although we have recognized that, in some circumstances, a physician can be liable for a battery, which we have also called a "technical" battery, *Pugsley v. Privette*, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980), our prior cases did not call upon this Court to draw the boundary that separates a technical battery from an action for negligence.

In *Pugsley*, the dispositive issue was whether the plaintiff had revoked the consent she initially gave, by demanding on the morning of the surgery that the operation proceed only in the presence of a particular physician. 220 Va. at 900, 263 S.E.2d at 75. That particular physician was not present during the surgery. *Id.* at 900, 263 S.E.2d at 76. We explained that "[a]n unauthorized operation is a wrongful and unlawful act for which the surgeon will be liable in damages." *Id.* at 899, 263 S.E.2d 74. Furthermore, "consent to an operation may . . . be withdrawn, if timely and unequivocally done, thereby subjecting the surgeon to liability for battery if the operation is continued." *Id*. at 899-900, 263 S.E.2d at 74.

In *Washburn v. Klara*, 263 Va. 586, 592, 561 S.E.2d 682, 686 (2002), although the plaintiff consented to a diskectomy at the C6-C7 level, the evidence indicated that the physician *additionally* operated at the C7-T1 level. We concluded that the case presented a factual issue for the jury about whether the surgeon "*intentionally* performed a cervical diskectomy at two levels of [the patient's] spine, thus exceeding the scope of her consent." *Id.* (emphasis added).

Finally, in *Woodbury v. Courtney*, 239 Va. 651, 652-653, 391 S.E.2d 293, 294 (1990), the patient consented to an exploratory biopsy of her breast to determine whether a suspicious mass detected in her left breast was malignant. The physician instead performed a partial mastectomy, removing a quarter of her left breast. *Id.* at 653, 391 S.E.2d at 294. The patient sued, arguing

4

that her consent was limited to the removal of one centimeter of tissue and that she had not consented to the procedure actually performed. *Id.* We held that the plaintiff's allegations created a factual issue for the jury concerning the extent of the permission the patient granted to the physician, and whether he exceeded the scope of that permission. *Id.* at 654, 391 S.E.2d at 295.

Our precedent thus establishes that a technical battery is present where (1) the patient placed terms or conditions on consent for a particular procedure, and the doctor ignored those terms or conditions; (2) the physician intentionally performed an additional procedure beyond the procedure the patient consented to; or (3) the physician intentionally performed a different procedure or one that differs significantly in scope from the procedure for which the patient provided consent. *Pugsley*, 220 Va. at 899-900, 263 S.E.2d at 75; *Washburn*, 263 Va. at 592, 561 S.E.2d at 686; *Woodbury*, 239 Va. at 654, 391 S.E.2d at 295. In the present case, the physician set about performing the exact procedure the patient consented to, on the intended structure of the body (here, the spine), but unintentionally, either by negligence or as an unforeseen complication, performed the procedure in a location on that structure different from the one that was targeted (here, an adjacent level of the spine). Our precedent does not address a situation like this one. We therefore must resolve whether a technical battery extends to this scenario.

II. BATTERY AND NEGLIGENCE CONSTITUTE DISTINCT THEORIES OF RECOVERY, WITH DISTINCT ELEMENTS OF PROOF.

The tort of battery and the tort of negligence both provide avenues of recovery to compensate persons who have been wronged by the actions of a health care provider. The interests protected by the tort of battery and the tort of negligence, however, are different. Battery protects two personal interests: "first, the interest in the physical integrity of the body,

5

that it be free from harmful contacts; second, the purely dignitary interest in the body that it be free from offensive contact." 1 Fowler V. Harper et al., *Gray on Torts*, § 3.2 (3rd ed. 2006). "The central core of battery is relatively straightforward: the defendant must respect the plaintiff's wishes to avoid intentional bodily contact." 13 Peter N. Swisher et al., Virginia Practice: Tort and Personal Injury Law § 2.7 (2016). A physician may perform an operation with great skill and nevertheless be liable for a battery if the patient did not consent. *See, e.g.*, *Pedesky v. Bleiberg*, 59 Cal. Rptr. 294, 298 (Cal. Ct. App. 1967).

The tort of negligence serves a different function. In addition to providing compensation, "[t]he purpose of imposing tort liability for negligence is . . . to encourage individuals to exercise reasonable care." *United States v. Wright*, 777 F.3d 635, 641 (3rd Cir. 2015). *See also Neiman v. American Nat'l Prop. & Cas. Co.*, 613 N.W.2d 160, 167 (Wis. 2000) ("The prospect of liability for tort damages is an incentive for individuals to act with the level of due care that the law demands.").

Another important difference between battery and negligence is that "[b]attery in tort law is exclusively an intentional tort, so if defendant accidentally comes in contact with the plaintiff, that action would sound in negligence." Swisher et al., *supra*, at § 2.7. Intent in this context means "(a) that the actor engage[d] in volitional activity and (b) that he intend[ed] to violate the legally protected interest of another in his person." Harper, *supra*, at § 3.3. Negligence, in contrast, consists of the "failure to exercise ordinary care." *Thomas v. Snow*, 162 Va. 654, 661, 174 S.E. 837, 839 (1934). Intentional conduct is not required. Rather, "heedlessness, inattention, [and] inadvertence" can be sufficient for liability in negligence. *Id.* at 660, 174 S.E. at 839.

Trials for technical batteries also proceed differently from trials for negligence. A plaintiff ordinarily must present expert testimony in a medical malpractice case.

> Issues involving medical malpractice often fall beyond the realm of common knowledge and experience of a lay jury. Therefore, in most instances, expert testimony is required to assist the jury. Expert testimony is ordinarily necessary to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages.

*Beverly Enterprises-Virginia v. Nichols*, 247 Va. 264, 267, 441 S.E.2d 1, 3 (1994); *see also* Code § 8.01-581.20. Although expert testimony is not always required, such instances will be "rare." *Beverly Enterprises-Virginia*, 247 Va. at 267, 441 S.E.2d at 3. Ordinarily, a plaintiff claiming negligence by the health care provider must present expert testimony to establish the standard of care.

Battery is different. "In battery cases it has generally been held that expert medical testimony is not required to establish a standard of care or to show causation." *Gerety v. Demers*, 589 P.2d 180, 191 (N.M. 1978). That is because "[t]he factual issue is whether the patient did or did not consent to the specific operation performed by the physician," *id.*, and "[t]here is nothing unique about the doctor-patient relationship that warrants a rule that in all cases expert medical testimony is required to establish what was agreed to by the parties," *id.*

III.     THE UNDISPUTED FACTS DO NOT SUPPORT A CLAIM FOR BATTERY.

The issue before us is one of law, namely, what must a plaintiff in the medical malpractice context prove to establish the intentional tort of battery, as opposed to what a plaintiff must prove to establish negligence. We review questions of law *de novo*. *Kellermann v. McDonough*, 278 Va. 478, 487, 684 S.E.2d 786, 790 (2009).

Whether a technical or medical battery has occurred generally hinges on the question of consent. *Pugsley*, 220 Va. at 899, 263 S.E.2d at 74. A battery in the medical context is the

7

unauthorized or unconsented to touching of the person of another. Swisher et al., § 2.7. To be liable for battery, the defendant health care provider must have done two things. First, the health care provider must have intentionally made physical contact with the patient and, second, that physical contact must have been deliberately against the patient's will or substantially at variance with the consent given. The question of authorization or consent is further broken down into two related issues, consent for the procedure and the related question of informed consent, that is, whether the health care provider disclosed the risks associated with a particular procedure.

A.    The patient consented to the surgery.

Mr. Osborne consented to a foraminotomy and fusion on level C5-C6. Dr. Mayr performed a foraminotomy and fusion and intended to perform that operation on level C5-C6. However, Dr. Mayr instead performed the procedure on the adjoining level of Mr. Osborne's spine. The plaintiff argues that there was no consent for the surgery that Dr. Mayr performed, and therefore, the surgery constituted a battery. There are several difficulties with this contention.

First, such an expansive conception of a technical battery would effectively jettison the required showing of intent. Battery is an intentional tort. The justification for holding a physician liable is that the physician has acted in "conscious disregard of the patient's interest in his physical integrity." *Woolley v. Henderson*, 418 A.2d 1123, 1133 (Me. 1980).

Second, the plaintiff's position would have the effect of displacing the ordinary requirement of expert testimony in a broad range of cases. Surgeries and other procedures commonly involve the disturbance of, or even damage to, neighboring tissues. A surgery can yield tragic results or complications even with the utmost care by the surgeon. The requirement of expert testimony to establish the standard of care ensures that the factfinder makes an

8

informed decision concerning whether the physician's actions fell within or violated the standard of care. *Beverly Enterprises-Virginia*, 247 Va. at 267, 441 S.E.2d at 3. This requirement is at the heart of the General Assembly's statutory scheme for medical malpractice actions. Code § 8.01-581.20. Deviations from this requirement should be "rare." *Beverly Enterprises-Virginia*, 247 Va. at 267, 441 S.E.2d at 3.

We agree with the observation that to "premise a claim for medical battery on the assertion that [the patient] did not consent to the negligent performance of the medical procedure otherwise covered by valid consent . . . would transform every medical malpractice claim into a battery claim." *Morton v. Wellstar Health Sys.*, 653 S.E.2d 756, 757 (Ga. Ct. App. 2007).

These considerations lead us to conclude that a physician is not liable for a battery unless the plaintiff establishes a prima facie case that the physician performed an operation "against the patient's will or substantially at variance with the consent given." *Woolley*, 418 A.2d at 1133. *Compare id.* at 1126, 1133 (operation at immediately adjoining lumbar interspace sounded in negligence rather than in battery) with *Gaskin v. Goldwasser*, 520 N.E.2d 1085, 1094-95 (Ill. Ct. App. 1988) (sustaining battery verdict based on removal of five additional teeth the patient had not consented to have the dentist remove and such removal was not substantially similar to the consent given). The facts must be sufficient to permit an inference that the physician intended to disregard the patient's consent regarding the procedure or the scope of the procedure.

Mr. Osborne consented to a specific surgical procedure and Dr. Mayr set about performing that very procedure. Dr. Mayr did not perform a substantially different, or additional procedure which differed significantly in scope relative to the procedure for which the patient provided consent. The evidence unequivocally establishes that Dr. Mayr did not intend any unpermitted contact and the plaintiff's battery claim thus fails as a matter of law.

9

B.    Whether the physician failed to disclose certain risks sounds in negligence.

This brings us to the remaining question, whether the patient's consent was informed, and, if not, whether the physician's failure to disclose a particular risk gives rise to a claim for negligence or a claim for a technical battery.  Dr. Mayr testified at trial that he told his patient of the risk that the "hardware can be misplaced and that that may have to be revised down the road."  Mrs. Osborne denied that Dr. Mayr gave her husband any such warnings.  Viewing the evidence in the light most favorable to the prevailing party, *Luria v. Board of Dirs. Of Westbriar Condo. Unit Owners Ass'n*, 277 Va. 359, 365, 672 S.E.2d 837, 840 (2009), in this instance the plaintiff, requires us to discount Dr. Mayr's testimony on this point.

Whether a physician failed to disclose certain risks and, therefore, whether the patient's consent is truly "informed" is a matter that sounds in negligence.  "[M]ost courts now reserve the battery theory for cases where the treatment was completely unauthorized, while negligence is the basis for actions alleging that the physician obtained the patient's consent without making the appropriate disclosure of risks and benefits."  4 Leonard J. Nelson III, Medical Malpractice § 22.03[1] (David W. Louisell & Harold Williams, eds. 2016).  *See also* 1 Benjamin Levine, Medical Malpractice § 4.11 (David W. Louisell & Harold Williams, eds. 2016) ("Generally, the assault and battery theory has been applied in situations where the physician failed totally to obtain the patient's consent.  Where the physician made a disclosure but the propriety of that disclosure is questioned, the correct theory is negligence.").  We agree with the majority view.

When a patient has consented to surgery but complains that the physician has not disclosed certain risks, the dispositive question is whether the physician breached the standard of care by failing to disclose those risks.  Breach of the standard of care falls within the realm of negligence and does not constitute an intentional tort.  Furthermore, the negligence theory "better

10

accords with the nature of the physician-patient relationship and avoids the apparent harshness of liability for assault and battery." 1 Gordon L. Ohlsson, Medical Malpractice § 8.06[2] (David W. Louisell & Harold Williams, eds. 2016).

"To defeat a battery claim . . . the information which must be disclosed is quite narrow in scope." *Gerety v. Demers*, 589 P.2d 180, 191 (N.M. 1978). "A physician only has to inform the patient of the *nature* of the procedure; that is, what the doctor proposes to do to him." *Id.* As one of our sister supreme courts explained:

> [W]hen the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

*Cobbs v. Grant*, 502 P.2d 1, 8 (Cal. 1972). Failure to abide by the standard of care regarding disclosures is quintessentially an action for negligence which will ordinarily call for expert testimony.

The plaintiff's battery claim fails as a matter of law. This does not leave a plaintiff without a remedy. In situations like this one, however, the plaintiff must prove the physician was negligent under the relevant standard of care.[4]

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the trial court.

*Reversed and final judgment.*

---

[4] Our disposition renders the second assignment of error moot. Accordingly, we do not address it.

11