COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Raphael, Lorish and Bernhard
Argued at Christiansburg, Virginia


BARRY LEWIS SWANSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1715-24-3                      JUDGE LISA M. LORISH
                                                    NOVEMBER 5, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Sandra M. Workman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


A jury convicted Barry Lewis Swanson of attempted malicious wounding, carjacking

with a firearm, third-offense domestic assault and battery, and use of a firearm in the commission

of a felony.[1]  On appeal, Swanson argues that the trial court erred by denying his pretrial motion

for new appointed counsel.  He also challenges the sufficiency of the evidence to support his

carjacking and domestic assault and battery convictions.  For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Swanson pleaded guilty to several other offenses: armed statutory burglary, use of a
firearm in the commission of a felony, two counts of maliciously discharging a firearm at an
occupied dwelling, possession of a firearm on school property, and felony eluding police.

## BACKGROUND[2]

Swanson and his girlfriend, Josanda White, got into an argument while they were "going through a breakup." Later that day, Alexis Smith was driving White and another friend, Shaniqua Murphy, when they stopped in a parking lot. Swanson then arrived and approached the front passenger door of Smith's vehicle, where White was seated. Swanson and White argued through the car's "cracked" window. White could tell that Swanson was "mad." During the conversation, Swanson tried to get into the car. At White's request, Smith tried to raise the window, but lowered it instead, allowing Swanson to reach through the window. Then, "somehow [White] was out [of] the car." White did not "get out on [her] own" but could not remember how the door "unlocked." She speculated that Swanson "opened the door and that's how it happened." Murphy added that "it happened fast." And Smith testified that Swanson "pulled" White out of the car, though she was "not exactly sure."

After White was out of the car, she and Swanson started "fighting" and "hitting each other." White testified that Swanson "started" the fight. As the fight began, Murphy and Smith "jumped" out of the car. Murphy then saw that Swanson had a gun, but Smith did not see the gun until later when Swanson pulled it out. While they were fighting, Swanson punched the side of White's face, wounding her next to her eye and on her cheek.

During the fight, Swanson fired ten gunshots into the air to scare away the three women. White, Murphy, and Smith "ducked down" and ran across the street. Swanson briefly pursued the women into the street and tried to take Smith's keys.

---

[2] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and "regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Corporal Hawkins of the Danville Police Department subsequently arrived at the scene, and Swanson aimed his gun at Hawkins and fired multiple times. Hawkins fired back once. Hawkins then called for backup as Swanson fled on foot.

Swanson emerged at a nearby apartment complex, shot the lock from an apartment door, and forced his way inside. The apartment owner saw Swanson rummaging through her purse before she locked herself in her bedroom. Swanson then stole her keys and took her car. He quickly parked the car, however, when he realized police had spotted him, and resumed his flight on foot.

Swanson next emerged at a school where parents were in a car line, waiting to pick up their children. Natalie Ferrell, a mother of one of the students, heard gunshots as she waited in the car line. Ferrell saw Swanson appear from the trees with a gun in his hand. Swanson stopped at Ferrell's door, leaned toward the window, and said, "[M]a'am, I have to take your car. The police are trying to kill me." Ferrell grabbed her purse and left the car, taking her keys with her. As she was "stepping [out of] the car," Swanson, who was still holding the gun, "snatched" the keys out of her hand, sat in the driver's seat, and closed the door. Ferrell acknowledged that Swanson did not "verbally" threaten her but testified that she relinquished her vehicle only because Swanson had a gun and had been exchanging gunfire with police. Swanson then drove out of the parking lot but was ultimately apprehended by police.

Swanson was charged with numerous offenses, including carjacking, malicious wounding, third offense domestic assault and battery, and various firearm charges. Swanson's trial was continued four times: three times on Swanson's motion and once because of a court conflict. After the continuances, the court scheduled Swanson's case for a two-day jury trial beginning on August 7, 2024. But on June 26, Swanson's court-appointed public defender, Yerisbel Jimenez, moved the court for permission to withdraw as counsel of record. The written motion alleged an "actual conflict of interest . . . between [Swanson] and the Public Defender's Office," but did not provide

details about the nature of the conflict. After a hearing the next day,[3] the trial court denied the motion to withdraw. Lee Smallwood, a deputy public defender from the same office, subsequently commenced representation of Swanson.

At the arraignment on July 29, Swanson pleaded not guilty to the charges but, arguing *pro se*, asked the court to appoint him new counsel. Swanson explained that he had complained "twice" to the trial court about his attorney, whom he had seen only "a handful of times," though Smallwood later proffered that Swanson had "declin[ed]" to meet with him "at the jail." He claimed that Lopez and Smallwood had given him conflicting information and he would not mind another continuance because he wanted "a fair trial."

The trial court responded that it did not have "an unlimited supply of attorneys" it could appoint and reminded Swanson that the case had been pending for 18 months. Given the number of witnesses, difficulty scheduling a two-day jury trial, and prior continuances, the court continued with the arraignment.

Swanson, continuing *pro se*, added that his counsel had "tried to withdraw" and waived his right to a speedy trial "behind [his] back." Swanson requested that he be appointed a specific attorney in the public defender's office. The trial court told him that it did not have the authority to appoint specific attorneys "within the public defender's office."

Swanson then asked the court if he could hire his own attorney. The court replied that he could, but his appointed counsel would not be relieved from representation until Swanson actually hired new counsel. The court stated it would grant a continuance for Swanson's new attorney if Swanson could hire someone before trial. Swanson replied that he needed more time to pay for and hire an attorney. The court replied that the case had been pending for a long time and "need[ed] to

---

[3] The record does not include a timely filed transcript of this hearing. *See* Rule 5A:8(a).

be tried." The court stated it would not appoint Swanson a new lawyer, denying his request. The case proceeded to trial on August 7, 2024.

After the trial,[4] the jury convicted Swanson of attempted malicious wounding, carjacking with a firearm, third-offense assault and battery of a family member, and use of a firearm in the commission of a felony. Swanson appeals.

## ANALYSIS

First, Swanson argues that the trial court erred by "refusing to appoint" new counsel. He then challenges the sufficiency of the evidence to support his carjacking and domestic assault and battery convictions.

### I. New Appointed Counsel

When "an indigent defendant makes a timely and good faith motion" for "new" appointed counsel, "the trial court clearly has a responsibility to determine the reasons for [his] dissatisfaction with his current counsel." *Kinard v. Commonwealth*, 16 Va. App. 524, 526 (1993) (citing *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990)). Yet "[w]hether an indigent defendant's appointed counsel should be discharged lies within the sound discretion of the trial court." *Id.* (citing *United States v. Gallop*, 838 F.2d 105, 108 (4th Cir. 1988)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

It is well-established that the Sixth Amendment right to counsel "entitles indigent criminal defendants to court appointed counsel in felony cases." *Brown v. Commonwealth*, 288 Va. 439, 442

_____

[4] After the Commonwealth's case-in-chief, Swanson entered pleas of guilty on the charges for armed statutory burglary, use of a firearm in the commission of a burglary, maliciously discharging a firearm in an occupied building, possession of a firearm on school property, and felony eluding. After a colloquy, during which Swanson represented that he was satisfied with the services of his attorney, the court accepted the pleas and convicted him of those charges. Swanson does not appeal any of these convictions.

(2014). Although a defendant who can afford to hire counsel has a constitutional right to choose his attorney, "the right to choice of counsel 'does not extend to defendants who require [court appointed] counsel.'" *Id.* (alteration in original) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006)). Thus, we have held that an indigent defendant "may not discharge his court appointed counsel at will. Only the court can do so." *Kinard*, 16 Va. App. at 526 (citing *Martin v. United States*, 691 F.2d 1235, 1241 (8th Cir. 1982)). And a court might do so only if the defendant, among other things, "shows good cause." *Id.*

Swanson argues that the court should have appointed different counsel to represent him.[5] Swanson was clearly unhappy with his representation from the public defender's office, and he failed to cooperate with his attorney. Swanson argues that he "repeatedly begged" the trial court for new counsel because he had "lost trust" in counsel given the contradictory advice he had received, and because his attorney had allegedly waived his speedy trial rights. But Swanson did not provide any details about the supposedly contradictory advice, nor the circumstances surrounding his dissatisfaction with his counsel's waiver of his speedy trial rights and motion to withdraw as counsel. We have held that mere dissatisfaction with appointed counsel does not constitute good cause. *Kinard*, 16 Va. App. at 526-27.

Swanson's arguments therefore provide no basis from which we could conclude that his counsel provided ineffective assistance or that the attorney-client relationship was destroyed. The trial court was not required to accept as true Swanson's conclusory and unsupported allegations to

---

[5] The Commonwealth argued that Swanson failed to preserve any challenge to the court's refusal to appoint new counsel because Swanson did not make this argument below with enough specificity and because the trial court did not explicitly deny the motion at that time. Because Swanson moved the trial court for new appointed counsel at the arraignment hearing, provided his reasons therefore, and advances those same arguments in his opening brief, we find the issue was sufficiently raised below. In addition, by continuing with the arraignment and rebuffing Swanson's arguments, the court implicitly denied his motion for new counsel. *See Mayr v. Osborne*, 293 Va. 74, 79 n.3 (2017) (holding that an implicit denial of the appellant's motion preserved the issue for appeal).

the contrary. *See Bethea v. Commonwealth*, 297 Va. 730, 756 n.13 (2019) (noting that a court need not give weight to a proffer). In fact, Swanson later undermined his assertions that he was dissatisfied with his counsel during his plea colloquy at trial, where he asserted that he was satisfied with his counsel's representation, at least as to the charges for which he was pleading guilty. *See Delp v. Commonwealth*, 72 Va. App. 227, 242 (2020) (holding that a defendant's argument that he was entitled to new court appointed counsel could not be "reconciled" with his statements at a subsequent guilty plea colloquy, where he affirmed that he was "satisfied with the assistance of [his] attorney" (alteration in original)).

Finally, "[a] court can properly refuse a request for substitution of counsel when the defendant's own behavior creates the problem." *United States v. DeTemple*, 162 F.3d 279, 289 (4th Cir. 1998). Here, the record demonstrates that Swanson had refused to meet with his counsel to prepare for trial, undermining any allegation that his counsel was unsatisfactory. An indigent defendant cannot refuse to cooperate with counsel and then use the resulting discord as a basis to seek new counsel. Thus, we find no abuse of discretion in the trial court's refusal to appoint new counsel.

II. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

*A. Carjacking*

To support a carjacking conviction, the evidence must demonstrate

> that (i) the victim was in possession or control of a motor vehicle; (ii) the perpetrator intentionally seized, or seized control of, the vehicle, either temporarily or permanently; and (iii) the perpetrator so deprived the victim . . . by means of one or more of the specifically prohibited acts—which includes the use of a firearm.

*Hilton v. Commonwealth*, 293 Va. 293, 299 (2017) (summarizing Code § 18.2-58.1(B)). Code § 18.2-58.1(B) identifies one such prohibited act as seizing the vehicle "by the threat or presenting of firearms."

Swanson notes that, in the context of an offense under Code § 18.2-53.1 for use of a firearm in the commission of a felony, "[t]he word 'threaten' means 'to utter threats against: promise punishment, reprisal, or other distress to.'" *Dezfuli v. Commonwealth*, 58 Va. App. 1, 10 (2011) (citing *Webster's Third New International Dictionary*, 2382 (1993)). Alleging that he was not verbally abusive and uttered no threats, he contends that the mere presence of the firearm was insufficient to constitute a threat appropriate to sustain his conviction. He contends that there must have been an explicit or implied threat to use the gun.

Swanson's argument myopically focuses only on the word "threat" in the carjacking statute, omitting that the offense may be accomplished by seizing control of a vehicle "by the threat *or presenting* of firearms." Code § 18.258.1(B) (emphasis added). Here, Swanson had just finished exchanging gunfire with police within earshot of Ferrell in the car line. He then approached Ferrell's driver's window not "merely possessing the firearm," as he contends on brief, but with the firearm securely gripped, displayed, and presented in his hand. Ferrell heard the gunshots, and then she saw the firearm in Swanson's hand.

Nor did Swanson merely "ask" Ferrell for her car. Instead, he told her, "I *have* to take your car." (Emphasis added). And as he made that demand, he used his free hand to grab Ferrell's door handle, attempting to open it from the outside. Viewed in the light most favorable to the Commonwealth, those circumstances demonstrate that Swanson was neither asking Ferrell for her car nor giving her an option. He was demanding her car. Indeed, Ferrell understood Swanson's demand, testifying that she would not have relinquished control of her vehicle to Swanson but for the fact that she heard gunshots and subsequently saw a gun in his hand. Furthermore, Swanson's argument overlooks that he effectuated seizing control of Ferrell's vehicle by snatching her keys out of her hand. That is, Ferrell did not voluntarily give Swanson the keys because he asked "politely"; he seized them from her grasp without her consent while he was still holding the gun.

In sum, Swanson demanded that Ferrell relinquish control of her vehicle while displaying a firearm in his hand, and he seized her keys out of her hand to effectuate his demand. Ferrell testified that she understood the demand and relinquished control in fear "because he had a gun." And given the surrounding evidence, her response was a reasonable one. There is thus sufficient evidence to support Swanson's carjacking conviction.

*B. Domestic Assault and Battery*[6]

"For combat to be 'mutual,' it must have been voluntarily and mutually entered into by both or all parties to the affray." *Connell v. Commonwealth*, 34 Va. App. 429, 439 (2001) (quoting *Lynn v. Commonwealth*, 27 Va. App. 336, 356 (1998)). Indeed, "[o]ne who is assaulted may and usually does defend himself, but the ensuing struggle cannot be accurately described as a mutual combat." *Id.* (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 72-73 (1993)). Otherwise, "every fight would be a mutual combat." *Smith*, 17 Va. App. at 73 (quoting *Harper v. Commonwealth*, 165 Va. 816, 820 (1936)).

Here, White did not agree to enter into combat with Swanson. Rather, Swanson unexpectedly confronted White in a parking lot, angrily approaching the passenger window of Smith's car where White sat. White testified that she did not leave the vehicle on her own. Murphy explained that it all "happened fast," and Smith testified that Swanson "pulled" White out of the car, though she was "not exactly sure." The testimony of White, Murphy, and Smith, taken together and viewed in the light most favorable to the Commonwealth, supports the conclusion that Swanson pulled White from the car. Moreover, once White was in the parking lot with Swanson, he struck her on the side of her face, causing a wound.

White admitted that she "started . . . fighting" Swanson and they were "hitting each other." But she clarified that Swanson "started" the fight. Thus, those circumstances dispel Swanson's suggestion that he and White mutually agreed to enter an affray. Swanson was the aggressor who started the fight by angrily approaching her, removing her from the vehicle, and striking her head. That White defended herself does not mean the ensuing struggle was mutual combat.

---

[6] We disagree with the Commonwealth that Swanson did not preserve his mutual combat argument for appeal because he did not explicitly ask that the charge be dismissed on that basis. During his motion to strike, Swanson explicitly argued, "what we have here is mutual combat and it should not be assault and battery third."

CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*