MICHAEL SEAN RIZZO, JR., ETC., ET AL.

V.

MAURICE SCHILLER, M.D.

Record No. 930977

June 10, 1994

Present: All the Justices

*Martin Trpis (Hugh B. Stuart*, on briefs), for appellants.
*Norman F. Slenker (Slenker, Brandt, Jennings & Johnston*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider whether the plaintiffs presented sufficient evidence to establish a *prima facie* case of medical malpractice against a physician who allegedly failed to obtain the mother's informed consent to use obstetrical forceps to deliver her baby.

Michael Sean Rizzo, Jr., by Pamela Rizzo, his mother and next friend, Pamela Rizzo, individually, and Michael Sean Rizzo, Sr., filed this action against Maurice Schiller, M.D. The plaintiffs alleged that Dr. Schiller, an obstetrician and gynecologist, breached the standard of care owed to them when he assisted Ms. Rizzo with the delivery of Michael. Specifically, the plaintiffs alleged that Dr. Schiller was negligent in the use of obstetrical forceps during the delivery and that he failed to obtain Ms. Rizzo's informed consent to use the forceps.

The case was tried before a jury. The trial court granted Dr. Schiller's motion to strike the plaintiffs' informed consent claim. The case proceeded to the jury on the theory that Dr. Schiller was negligent in the use of the obstetrical forceps. The jury returned a verdict in favor of Dr. Schiller, and we awarded the plaintiffs an appeal on issues related to their informed consent claim.

■ In reviewing the trial court's decision to strike the plaintiffs' evidence, we must consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the plaintiffs. Furthermore, any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the plaintiffs. *Waters* v. *Safeway Stores, Inc.*, 246 Va. 269, 270, 435 S.E.2d 380, 380 (1993).

Pamela Rizzo was admitted to Fairfax Hospital on November 7, 1989, about 9:00 a.m. She was in active labor, and Dr. Schiller was notified of her admission. Upon admission to the hospital, Ms. Rizzo signed the following form:

**Authorization for Medical and Surgical Procedures**

**Patient History No.** /P/9456

I hereby authorize Dr. Schiller , and/or other members of the Medical Staff of The Fairfax Hospital of his choice, to perform diagnostic or therapeutic medical and surgical procedures on and to administer anesthetics to Pamela Rizzo . I further authorize The Fairfax Hospital to dispose of any removed tissue or amputated parts.

| 11/07/89 | [Signed] Pamela S. Rizzo |
|---|---|
| (Date) | (Signature) |
| [Signed] Vera Thomas | |
| (Witness) | (Relationship) |

About 12 hours later, Ms. Rizzo's fetal membranes were artificially ruptured at 8:50 p.m., and about 10:00 p.m., she was "pushing with contractions." At 10:15 p.m., Dr. Schiller ordered that Ms. Rizzo be taken to the delivery room. While in the delivery room, Ms. Rizzo made a few, but unsuccessful, attempts to "push" the baby through the birth canal with her abdominal muscles. When Ms. Rizzo's attempts to "push" were unsuccessful, Dr. Schiller told her that he was going to use forceps to deliver the baby. Ms. Rizzo testified that "before I could even get my composure together, ask what they were for, why, [the forceps] were inside me. And my son's head was out, just the head."

Michael was born about 10:30 p.m. About one and one-half hours later, he began to look pale. He was transferred to the intensive care nursery for evaluation. The following morning, Dr. Kathleen B. French, a neurosurgeon, performed a surgical proce-

dure on Michael, and she determined that he had a subdural hematoma. Dr. French testified that a subdural hematoma, which is caused by a trauma to the head, can be described as a collection of blood between the brain tissue and the covering to the brain that is called the dura.

Dr. French, as well as Dr. Mark C. Arner, a physician who practices obstetrics and gynecology, testified that Michael's subdural hematoma was caused by trauma associated with the use of the forceps. Dr. Lawrence T. Taft, who qualified as an expert witness on the subjects of rehabilitative medicine, pediatrics, and neurology, testified that Michael has cerebral palsy and is permanently disabled as a result of this injury.

Dr. Arner qualified as an expert witness on the subjects of obstetrics and gynecology and gave the following testimony. Even though Ms. Rizzo had been given certain medication, she was capable of making medical decisions. Ms. Rizzo would have been able to deliver Michael spontaneously, without the use of forceps, had Dr. Schiller simply waited. If forceps are used in "non-emergent situations," the patient should be informed about the use of the forceps and should be given the opportunity to participate in the decision regarding whether the forceps will be used. Dr. Arner opined that Dr. Schiller breached the standard of care owed to Ms. Rizzo because he failed to allow her to participate in the decision to use forceps.

The plaintiffs contend that the trial court erred by striking their evidence because they established a *prima facie* case that Dr. Schiller failed to obtain Ms. Rizzo's informed consent for the use of obstetrical forceps during Michael's delivery. Dr. Schiller, however, argues that the plaintiffs' evidence fails to establish a *prima facie* case and that the plaintiffs failed to present evidence of proximate causation. Furthermore, Dr. Schiller asserts that Ms. Rizzo was allowed to participate in the decision to use forceps because she signed the authorization form. We disagree with Dr. Schiller.

In *Hunter* v. *Burroughs*, 123 Va. 113, 133, 96 S.E. 360, 366-67 (1918), we held that "it is the duty of a physician in the exercise of ordinary care to warn a patient of the danger of possible bad consequences of using a remedy," but that the physician's failure to warn "is not *per se* an act of negligence." Rather, the physician owes a duty to make a reasonable disclosure to the patient of all significant facts under the circumstances. This duty is

limited to those disclosures that a reasonable medical practitioner would provide under the same or similar circumstances. *Bly* v. *Rhoads*, 216 Va. 645, 648-50, 222 S.E.2d 783, 785-87 (1976). In most cases, expert testimony is necessary to establish those instances where the duty to disclose arises and what disclosures a reasonable medical practitioner would have made under the same or similar circumstances. *Id.*

■ We are of opinion that the plaintiffs presented sufficient evidence to establish a *prima facie* case that Dr. Schiller failed to obtain Ms. Rizzo's informed consent to use the obstetrical forceps. As we have already mentioned, Dr. Arner testified that the appropriate standard of care required that Dr. Schiller inform Ms. Rizzo about the use of the forceps and that she be given an opportunity to participate in the decision whether to use forceps. Ms. Rizzo testified that Dr. Schiller did not disclose any information to her about the use of the forceps and that he used the forceps without her consent.

■ It is true that Ms. Rizzo signed a document that purportedly is a consent form. However, this form did not inform her of any specific procedures that Dr. Schiller intended to perform; nor did it inform her of foreseeable risks associated with any procedures or risks in failing to perform any procedures. As Dr. Arner observed, the form is so general in nature that "you could also justify amputating her foot." We hold that the duty imposed upon a physician to obtain a patient's informed consent requires more than simply securing the patient's signature on a generalized consent form, similar to the form present here. The law requires informed consent, not mere consent, and the failure to obtain informed consent is tantamount to no consent.

■ We are also of opinion that the plaintiffs presented sufficient evidence of proximate causation as an element of their *prima facie* case. As we stated in *Brown* v. *Koulizakis*, 229 Va. 524, 331 S.E.2d 440 (1985):

The principle of tort litigation that issues of negligence and proximate cause ordinarily are questions of fact for the jury applies with no less force to medical malpractice cases. When the sufficiency of a plaintiff's evidence is challenged upon a motion to strike the evidence at the conclusion of the plaintiff's case-in-chief, the trial court should in every case overrule the motion where there is any doubt on the ques-

tion. . . . "The use of this motion as a means to defeat plaintiff's action should be confined and applied only to those cases in which it is conclusively apparent that plaintiff has proven no cause of action against defendant."

*Id.* at 531, 331 S.E.2d at 445 (citation omitted). Here, the plaintiffs presented evidence from which the jury might have inferred that had Ms. Rizzo been informed of the possible consequences associated with the use of obstetrical forceps, she would have continued to assist in the birth process by "pushing" and that Michael would have been born spontaneously. The plaintiffs also presented evidence from which the jury could have found that but for the use of the forceps, Michael would not have suffered the brain injury.

Accordingly, we will remand this case for a trial of the plaintiffs' claims of lack of informed consent.

*Reversed and remanded.*