PRESENT:  All the Justices

DAVID W. ALLISON, ET AL.

OPINION BY
v.  Record No. 160314                          JUSTICE STEPHEN R. McCULLOUGH
July 27, 2017
DEBORAH BROWN


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

We consider in this medical malpractice appeal whether the plaintiff pled a claim for

battery in her complaint and whether the trial court erred in instructing the jury on battery and

informed consent and in denying a motion to strike that claim.  For the reasons explained below,

we reverse and remand the case for a new trial.

BACKGROUND

I.       FACTUAL BACKGROUND

Deborah Brown is a breast cancer survivor.  As part of her treatment for that illness, on

June 15, 2010, Brown underwent a bilateral mastectomy and chemotherapy.  Following the

mastectomies, she received radiation treatment in the area of her left breast, where the cancer had

been located.  The radiation damaged the tissue of the targeted area.  This damage posed a risk of

serious complications should there be subsequent surgeries on the irradiated breast.  As is

commonly the case, the mastectomies necessitated multiple reconstructive surgeries.  Dr. Allison

performed several such surgeries from June 2010 through August 2011.  These surgeries are not

at issue.

On October 3, 2011, Brown and Dr. Allison discussed yet another breast revision

surgery.  All agree that the original plan was for Dr. Allison to operate on both breasts.

Accounts diverge concerning what happened afterwards.  The plaintiff testified that she changed

her mind and decided that the surgery should occur on the right side only. She testified that she informed Dr. Allison of this fact in a pre-operation visit on November 7, 2011. In addition to her own testimony, she offered documentary evidence from medical records as well as expert testimony to support her contention that the surgery was to occur on the right breast only.

Dr. Allison testified, contrary to Brown's recollection, that she consented to bilateral breast surgery. He sought to distinguish or explain the medical records offered by Brown, and likewise submitted medical records in support of his recollection.

On November 22, 2011, Dr. Allison operated on both breasts. Brown suffered significant complications to her left breast following this surgery. As a consequence, she had to undergo six additional repair surgeries.

II.    THE LAWSUIT

On October 23, 2013, Brown filed this action against Dr. Allison. The factual portions of the complaint allege in relevant part that:

> 10.    . . . [Dr.] Allison performed implant replacement surgery on the wrong breast.
>
> 11.    As a result of said negligence, the Plaintiff has undergone additional surgeries to repair and revise her breasts.
>
> 12.    As a result of said negligence, the Plaintiff has suffered severe and permanent injuries.

Brown advanced one count of "negligence" against Dr. Allison personally and another count of "negligence" against his practice. Under these negligence headings, the complaint states that Dr. Allison "performed surgery on the wrong breast," that he "replaced the implant on the wrong breast," and that he "failed to exercise the degree of skill and diligence practiced by a reasonably prudent practitioner in the field of medicine in this Commonwealth." The complaint further states that the plaintiff sustained damages "[a]s the proximate result of said negligence." Neither

the word "battery" nor any other wording averring indication of an intentional tort appears in the initial complaint.

On July 10, 2014, the plaintiff filed a motion for leave to file an amended complaint to add a count for battery. The two negligence counts remained essentially unchanged from what Brown originally pleaded. The amended complaint added a third count for "battery," placed after the original complaint's two counts for "negligence." Under the battery heading, the plaintiff added seven new paragraphs alleging, among other things, that Dr. Allison "committed an unwanted touching of Plaintiff's body," that "Dr. Allison had no justification, excuse or consent for the unwanted touching," and that the plaintiff's damages were "caused by the battery."

Dr. Allison opposed the amendment, arguing that the claim was now time-barred because, *inter alia*, the plaintiff had failed to exercise reasonable diligence in raising the claim. At a hearing before Judge David S. Schell, the plaintiff argued that "[w]e have medical malpractice claims. We're simply adding a battery claim." The addition of the battery claim, the plaintiff argued, "simply allows for an additional instruction for the jury." The court ruled that the plaintiff should be granted leave to amend her complaint.

After the plaintiff filed the amended complaint, Dr. Allison filed an answer and a plea in bar, again asserting that the battery count was barred by the statute of limitations because, among other things, the plaintiff had not been diligent in pursuing the claim. In response, the plaintiff argued that "add[ing] a count for battery" was justified and the plaintiff had been reasonably diligent in raising the claim. A different judge, Judge Michael F. Devine, heard the argument on Dr. Allison's plea in bar. Counsel for the plaintiff explained his reasons for adding a battery count at this juncture, stating that "[t]o allege an intentional tort is a very serious matter, which I

3

don't like to do.  I don't like to allege intentional torts against physicians unless I have to.  And so it was frankly a matter of prudence."  Counsel further stated that following Dr. Allison's deposition and his lack of a colorable explanation for the surgery on the left side, the plaintiff decided to move forward with the claim for battery.  Effectively reversing the prior ruling by Judge Schell, Judge Devine agreed with Dr. Allison that the plaintiff had not been diligent in pursuing the battery claim.  Accordingly, he entered an order on September 26, 2014, dismissing the battery claim with prejudice.

The case proceeded to trial before yet another judge, Judge Robert J. Smith.  A first four-day jury trial resulted in a hung jury.  Months later, on the morning of the second jury trial, defense counsel made a motion to exclude any argument or evidence concerning the existence of consent.  Dr. Allison's counsel cited to Judge Devine's ruling striking the battery count from the amended complaint and argued that he is not legally "obligated to litigate a claim that has been dismissed with prejudice."  In response, the plaintiff argued that battery has "been in this case since its inception."  The court disagreed, but nonetheless denied Dr. Allison's motion, concluding that it would have to assess Dr. Allison's motions "in the crucible of all the evidence."

Dr. Allison also challenged the plaintiff's informed consent theory, arguing that her allegations did not raise a claim of lack of informed consent and that her expert designation failed to express any opinions with regard to informed consent.  He argued that the opinion offered by the plaintiff's expert centered on the absence of consent, not a lack of informed consent.  The plaintiff responded by noting that the defense expert's designation discusses informed consent and that the plaintiff was not misled or prejudiced by the plaintiff.  The court

4

denied Dr. Allison's pre-trial motions. Following the presentation of evidence, the court further denied both defense motions to strike.

Despite repeatedly agreeing that the battery count had been dismissed with prejudice, the trial court nevertheless instructed the jury on battery. The jury was also instructed on negligence and informed consent.

On the "issues" instruction, the jury was informed that

> [t]he issues in this case are:
>
> (1) Was the defendant negligent in that he did not have informed consent?
>
> (2) If he was negligent, was his negligence a proximate cause of the plaintiff's injuries?

The court further instructed the jury that

> A doctor has a duty to obtain his patient's informed consent before he treats her. Informed consent means the consent of a patient after a doctor has given the patient all information about the treatment and its risks that would be given to a patient by a reasonably prudent practitioner in the doctor's field of practice or specialty. A doctor is not required, however, to tell a patient what she already knows or what any reasonably prudent person would know.
>
> If a doctor fails to perform this duty, then he is negligent and is liable for any injury proximately resulting from the doctor's treatment if you believe from the evidence that the patient would have refused the treatment if the doctor had disclosed the information.[1]

The jury returned a general verdict for the plaintiff. Dr. Allison filed a motion to set aside the verdict on the same grounds he had articulated at trial. The court denied the motion.

---

[1] *See* 2 Virginia Model Jury Instructions -- Civil No. 35.080 (repl. ed. 2013) (styled "Treatment Without Informed Consent").

5

ANALYSIS

I.     THE INITIAL COMPLAINT DID NOT ALLEGE A CLAIM FOR BATTERY.

Under Virginia's notice pleading regime, "[e]very pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d). Stated another way, a pleading must be "drafted so that [the] defendant cannot mistake the true nature of the claim." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993).

The initial complaint in the present action said nothing about battery or intentional conduct on the part of Dr. Allison. Although it alleged that Dr. Allison operated on the wrong breast, it was clear that this allegation was made in pursuit of a negligence claim. The only two counts listed were for "negligence" and the totality of the allegations pointed in that direction. Paragraph 9 in the factual background section of the complaint stated that Dr. Allison "performed . . . surgery on the wrong breast," but the two paragraphs that followed stated that the plaintiff had to undergo additional surgeries "[a]s a result of said negligence" and that she suffered injuries "[a]s a result of such negligence."

Depending on the evidence, a surgery on the wrong body part can constitute either battery or negligence. *Mayr v. Osborne*, 293 Va. 74, 81, 795 S.E.2d 731, 735-36 (2017). Our careful review of the complaint leads us to conclude that the plaintiff's initial complaint pled one, and *only* one, theory of recovery: negligence. Nothing in the complaint informed the defendant that the plaintiff was alleging the intentional tort of battery. Consequently, we cannot agree with the plaintiff's argument that battery was there all along.[2]

---

[2] We note that when the plaintiff sought leave to amend, she did not argue, as she later did, that the complaint already alleged a battery. To the contrary, the plaintiff argued that alleging an intentional tort is a "very serious matter" and that she did not initially allege the

6

When the plaintiff filed an amended complaint adding a battery count, Dr. Allison responded with a plea in bar. Judge Devine sustained the plea in bar and struck the battery count on the ground that it was barred by the statute of limitations.[3] The judge who presided over the trial, despite repeatedly acknowledging that the battery claim had been dismissed with prejudice, nonetheless instructed the jury on battery. This was error.

The dismissal of a claim with prejudice is conclusive as to the rights of the parties on that claim. *Dalloul v. Agbey*, 255 Va. 511, 514, 499 S.E.2d 279, 281 (1998) ("Claims that have been dismissed with prejudice are not part of a pending action, because a dismissal with prejudice is generally as conclusive of the parties' rights as if the action had been tried on the merits with a final disposition adverse to the plaintiff."). A claim cannot be dismissed with prejudice on a pre-trial plea in bar and later be submitted to the jury. Once the court dismissed the battery claim with prejudice from the amended complaint, the only claims that remained were for negligence. Under well-settled Virginia law, "'[a] litigant's pleadings are as essential as his proof, and a court may not award particular relief unless it is substantially in accord with the case asserted in those pleadings. Thus, a court is not permitted to enter a decree or judgment order based on facts not alleged or on a right not pleaded and claimed.'" *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86, 710 S.E.2d 726, 731 (2011) (quoting *Jenkins v. Bay House Assocs.*, 266 Va. 39, 43, 581 S.E.2d 510, 512 (2003)).

---

intentional tort of battery as "a matter of prudence." The plaintiff went on to explain that Dr. Allison's March 7, 2014, deposition made clear that battery was a viable count, and that based on this factual development, the plaintiff was "adding a battery claim." The plaintiff asserted that adding the battery claim would "allow[] for an additional instruction for the jury."

[3] The plaintiff has not assigned cross-error to Judge Devine's dismissal with prejudice of the battery count. That ruling is now the law of the case.

The plaintiff responds that, even if the pleadings do not set forth a claim for a battery, there is no reversible error because the defendants had actual notice that she was pursuing a claim for battery. We cannot agree with this contention. The fact that a theory was mentioned over the telephone, whispered in the hallways of the courthouse, or even presented in a prior trial does not satisfy the bedrock requirement that a defendant must be notified in a complaint regarding what claim is being made against him.

> The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. It is the *sine qua non* of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. . . . Pleadings are as essential as proof, the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void. . . . Every litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence.

*Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141, 277 S.E.2d 228, 230 (1981) (quoting *Potts v. Mathieson Alkali Works*, 165 Va. 196, 207, 181 S.E. 521, 525 (1935)).

The plaintiff also cites Code § 8.01-275. That statute provides as follows:

> No action or suit shall abate for want of form where the motion for judgment or bill of complaint sets forth sufficient matter of substance for the court to proceed upon the merits of the cause. The court shall not regard any defect or imperfection in the pleading, whether it has been heretofore deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment, according to law and the very right of the cause, cannot be given.

8

We have held that the purpose of this statute is to foreclose "demurrers challenging pleadings on grounds that are not substantial or material, and which do not go to the very merits of a cause." *Griffin v. Griffin*, 183 Va. 443, 449, 32 S.E.2d 700, 702 (1945).

A pleading will be "upheld as sufficient, however informal, where [it is] sufficient in substance to fairly apprise the defendant of the nature of the demand made upon him, and states sufficient facts to enable the court to say that if the facts stated are proved, the plaintiff is entitled to recover." *Mankin v. Aldridge*, 127 Va. 761, 765, 105 S.E. 459, 460 (1920). And that is just the problem. The complaint as originally filed made no mention of battery. Although the complaint did repeatedly allege that Dr. Allison operated on the wrong breast, it always unmistakably tied this allegation to a negligence theory and, therefore, did not fairly apprise the defendant that the plaintiff was claiming a battery. Recognizing this deficiency, the plaintiff sought to amend, but the trial court ruled that the amendment was barred by the statute of limitations.

We hold that the trial court erred in instructing the jury on battery and we reverse on this ground.[4]

II. THE PLAINTIFF FAILED TO ESTABLISH PROXIMATE CAUSATION IN CONNECTION WITH A THEORY OF INFORMED CONSENT.

Dr. Allison also challenges the plaintiff's informed consent theory on a number of grounds. Among other things, he argues that the trial court should not have instructed the jury

---

[4] The plaintiff, citing Rule 5:25 and the invited error doctrine, also argues that by failing to object to the general verdict form, which did not differentiate between theories of recovery, Dr. Allison waived the arguments he presses on appeal. We disagree. Dr. Allison repeatedly made his objection known to the trial court, pretrial, during trial, and after trial. He provided the trial court with multiple opportunities to consider his arguments and gave the plaintiff ample opportunities to respond to these arguments. Nothing more was required. *See, e.g.*, *Wright v. Norfolk & W. Ry. Co.*, 245 Va. 160, 167-68, 427 S.E.2d 724, 728 (1993). *See also* Code § 8.01-384.

9

on informed consent and erred in denying his motion to strike the plaintiff's informed consent claim. He argues that the plaintiff's failure to prove proximate causation is fatal to her informed consent claim. He argues that to prevail on an informed consent claim, a plaintiff must prove that, had the doctor made the disclosures required under the standard of care, she would not have proceeded with the surgery. Responding, the plaintiff takes the view that "a lack of consent, by its definition, means there was a lack of informed consent." Put another way, the plaintiff's position is that surgery without consent is a mere subset of informed consent. Because she did not consent to the surgery, she argues, she proved her damages when the surgery nevertheless took place. We do not agree with the plaintiff.

"The theories of battery and informed consent are diametrically opposed and mutually inconsistent." *Whitley-Woodford v. Jones*, 600 A.2d 946, 947 (N.J. Super. Ct. App. Div. 1992).

> A battery is an intentional tort which, by definition, is not a cause of action for negligence. A claim in battery . . . may lie . . . where an operation is performed without the patient's consent or where the operation is not the surgical procedure to which the patient gave his consent. By contrast, where the consent to the treatment was given but with insufficient or incomplete disclosure of risks [or alternatives], the cause of action is . . . based on negligence of the physician to meet a recognized standard of care.

*Baltzell v. Van Buskirk*, 752 S.W.2d 902, 906 (Mo. Ct. App. 1988).

To prove a battery, the plaintiff must establish that the physician intentionally "performed an operation against the patient's will or substantially at variance with the consent given." *Mayr*, 293 Va. at 84, 795 S.E.2d at 737 (citation and internal quotation marks omitted). In other words, did the physician deliberately "disregard the patient's consent regarding the procedure or the scope of the procedure." *Id.* A plaintiff who proves a battery may recover damages even for a successful, skillfully performed surgery. *Id.* at 81, 795 S.E.2d at 736. To succeed on an informed consent claim, the plaintiff must establish that the physician breached the standard of

10

care by failing to disclose the material risks associated with the treatment or procedure, or the existence of alternatives if there are any, thereby precluding the plaintiff from making an informed decision about whether to undertake a particular procedure or course of treatment. *Tashman v. Gibbs*, 263 Va. 65, 73-74, 556 S.E.2d 772, 777-78 (2002); *see also Mayr*, 293 Va. at 85, 795 S.E.2d at 737-38.

We have held that the plaintiff in an informed consent case must prove not only that the physician was negligent but also "that the negligent act was a proximate cause of her injury." *Tashman*, 263 Va. at 76, 556 S.E.2d at 779. In this context, that means that the patient must prove that she would not have agreed to the treatment or procedure had the physician made a proper disclosure of the risks and alternatives associated with the treatment or procedure. *Id.*;[5] *see, e.g., Coryell v. Smith,* 653 N.E.2d 1317, 1319 (Ill. Ct. App. 1995) ("All courts recognizing the doctrine of informed consent require proof of proximate causation. The rule is that a plaintiff cannot recover under the doctrine unless [she] can prove by a preponderance of the evidence that [she] would not have given [her] consent to the proposed procedure had full and adequate disclosure been made at the time consent was originally given.").

The plaintiff's argument incorrectly collapses consent into informed consent.[6] Her evidence was that she did not consent at all to the surgery on her left breast. She presented no

---

[5] We note that we have not squarely addressed whether Virginia's law of informed consent includes an objective standard (that is, that a reasonably prudent person in the plaintiff's position would not have consented to treatment when provided with proper disclosures) or a subjective standard (that *this patient* would not have consented in the face of the disclosures required by the standard of care). This case does not call upon us to answer that question.

[6] The plaintiff relies on the following passage from *Rizzo v. Schiller*, 248 Va. 155, 159, 445 S.E.2d 153, 155-56 (1994): "The law requires informed consent, not mere consent, and the failure to obtain informed consent is tantamount to no consent." "Tantamount" means "akin to" or "equivalent in . . . significance, or effect." Webster's Third New International Dictionary 2338 (1993). The Court in *Rizzo* was thus not conflating a lack of *consent* with the absence of

11

evidence that a lack of disclosures by Dr. Allison prevented her from making an informed decision with respect to the surgery on her left side or that she would not have elected to have the surgery on that side in the face of proper disclosures. Her claimed damages did not flow from a lack of information about the procedure, *i.e.,* informed consent, but rather from a lack of consent altogether. Without any evidence to establish proximate causation, the informed consent claim fails as a matter of law. Accordingly, the trial court should have granted Dr. Allison's motion to strike the claim of informed consent and should not have instructed the jury on that theory. We reverse the judgment below on that basis as well.

III.  THE APPROPRIATE REMEDY IS A REMAND FOR A NEW TRIAL ON THE PLAINTIFF'S ORIGINAL THEORY OF NEGLIGENCE.

Dr. Allison urges us to reverse and enter final judgment in his favor. The complaint alleged that Dr. Allison negligently performed a surgery on the wrong breast. Although the evidence adduced by the plaintiff could support a finding of battery, it also could lead a jury to conclude that Dr. Allison did not deliberately ignore the plaintiff's wishes and that he was instead negligent.

Consent is an umbrella term. A surgery performed without consent may include (1) the intentional tort of battery, (2) an operation for which the plaintiff did not consent or had withdrawn her consent, but the physician negligently, rather than deliberately, performed the procedure, *Mayr*, 293 Va. at 84, 795 S.E.2d at 737, and (3) lack of informed consent, *see Tashman*, 263 Va. at 73-74, 556 S.E.2d at 777-78. The plaintiff's evidence was amply sufficient,

---

*informed consent. Rizzo* frames informed consent as a negligence tort, *id.* at 158-60, 445 S.E.2d at 155-56, and other cases have followed suit. *See, e.g.*, *Mayr*, 293 Va. at 85, 795 S.E.2d at 735-37; *Tashman*, 263 Va. at 73-76, 556 S.E.2d at 777-79.

if believed, to support a finding that Dr. Allison negligently performed the surgery despite the plaintiff's withdrawal of her consent.

In instruction V, the court instructed the jury that

> *A doctor has a duty to obtain his patient's informed consent before he treats her.* Informed consent *means the consent* of a patient after a doctor has given the patient all information about the treatment and its risks that would be given to a patient by a reasonably prudent practitioner in the doctor's field of practice or specialty. A doctor is not required, however, to tell a patient what she already knows or what any reasonably prudent person would know.
>
> *If a doctor fails to perform this duty, then he is negligent* and is liable for any injury proximately resulting from the doctor's treatment if you believe from the evidence that the patient would have refused the treatment if the doctor had disclosed the information.

(emphases added). Instruction V lends itself to two interpretations. In the context of this case, where the plaintiff's evidence addressed both her lack of consent to the procedure and informed consent, this instruction may well have led the jury to improperly equate withdrawn consent with lack of informed consent and to find Dr. Allison negligent on this basis. Alternatively, the jury may have interpreted this instruction to mean that although Dr. Allison properly informed his patient of the risks associated with the surgery, he was negligent because he performed the surgery without her consent. Dr. Allison focuses upon the "informed" portion of the instruction. But the jury may have found the "consent" language pivotal. In other words, the jury could have read the instruction to mean that the plaintiff must not only be informed, she must also consent after having been informed. And because she did not consent, the jury could have reasoned, Dr.

13

Allison was negligent.  In light of this ambiguity, and the jury's general verdict, we remand the

case for retrial solely on the plaintiff's original negligence counts.[7]

CONCLUSION

For these reasons, we will reverse and remand for a new trial consistent with this opinion.

*Reversed and remanded.*


JUSTICE McCLANAHAN, with whom JUSTICE POWELL joins, concurring in part and
dissenting in part.

I concur in the Court's holdings that the trial court erred in instructing the jury on

informed consent and battery for the reasons stated in the majority opinion.  I dissent, however,

from the Court's decision to remand the case for a "retrial" on plaintiff's "original theory of

negligence" because the plaintiff only presented two theories of recovery to the jury – informed

consent and battery.  On appeal, Dr. Allison has prevailed on both theories.  The plaintiff is not

entitled to a "retrial" on a theory of negligence she never presented to the jury.  A new trial is

generally *granted to a defendant* when a general verdict is returned for the plaintiff and the court

cannot determine whether it was based on an issue that was properly submitted to the jury or an

issue that was improperly submitted to the jury.[1]  Here, the Court is rewarding plaintiff, the

---

[7] Our disposition of the case obviates the need for us to address Dr. Allison's remaining
assignments of error.  In this connection, however, we insert a note of caution with respect to
instruction 18, which informed the jury that it should not consider the question of insurance
during its deliberations.  "The mention of insurance constitutes reversible error requiring a new
trial when the comment probably has misled or prejudiced the jury." *Lombard v. Rohrbaugh*,
262 Va. 484, 493-94, 551 S.E.2d 349, 353 (2001).  Although we have recognized limited
exceptions, such as "to show the interest, bias or prejudice of a hostile witness" who has a
"substantial connection" to the insurance carrier, *id.* at 495, 551 S.E.2d at 355, none of the
recognized exceptions to our general rule are present in this case.

[1] *See, e.g., Nail v. Jefferson Cnty. Truck Growers Ass'n,* 542 So.2d 1208, 1214-15 (Ala.
1988) (holding that where the trial court properly submitted some claims to the jury but
improperly submitted other claims, a new trial was required on claims properly submitted to the

losing party on appeal, with a new trial where a general verdict was rendered on *only improperly submitted issues*.

I.

At trial, plaintiff presented a claim for negligence based on the theory that Dr. Allison failed to obtain her informed consent for the operation on her left breast and a claim for battery based on the theory that Dr. Allison operated on her left breast without her consent. During arguments on Dr. Allison's pre-trial motions, plaintiff explained that the essence of her claims is, and always has been, that "Dr. Allison operated on the wrong breast. *That can only mean one of two things: He had no consent or he didn't have the informed consent . . . that is required.*" (Emphasis added.) Plaintiff further elaborated on her two claims stating that "there's essentially *two things* that could have happened here, either Dr. Allison did not have consent at all, which is one of our claims, in which case he has committed a *consent battery claim*, if you want to use

---

jury since the appellate court could not determine that the jury's general verdict was based on the properly submitted claims); *Matomco Oil Co. v. Arctic Mech., Inc.*, 796 P.2d 1336, 1343 (Alaska 1990) (noting that where any one of several issues is erroneously submitted to the jury and a general verdict is returned for plaintiff, the defendant is entitled to a new trial on the issues properly submitted due to the "impossibility of knowing whether the general verdict was based upon a properly submitted issue or an improperly submitted issue"); *Bruce Church, Inc. v. United Farm Workers*, 816 P.2d 919, 931 (Ariz. Ct. App. 1991) (noting that the defendant was entitled to have a general verdict set aside and new trial on properly submitted issues where "it is impossible to say whether the verdict was based upon an issue which was properly submitted to the jury or upon an issue which was improperly submitted"); *Mosher v. Schumm*, 166 P.2d 559, 561 (Colo. 1946) (holding that the defendant was entitled to new trial on a theory properly submitted to the jury "since the cause was submitted to the jury on instructions covering both grounds for recovery alleged by plaintiff, one of which was valid and the other not so" and it was "impossible to determine from the general verdict returned, upon which theory the jury found for plaintiff"); *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 710 (Iowa 2016) (same); *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.* 761 N.W.2d 151, 166 (Mich. Ct. App. 2008) (same); *Schroht v. Voll*, 71 N.W.2d 843, 846 (Minn. 1955) (same); *Clark v. Board of Education*, 109 N.E.2d 73, 74 (N.Y. 1952) (same); *Handex of the Carolinas, Inc. v. County of Haywood*, 607 S.E.2d 25, 37 (N.C. Ct. App. 2005) (same).

that word, *or* our proof . . . will be that he didn't adequately explain to Ms. Brown what he was planning to do, which is *lack of informed consent*." (Emphases added.)

When Dr. Allison moved to strike the evidence, both parties clearly understood that the only theories before the Court were informed consent and battery. As Dr. Allison argued in his motion to strike, "there are two claims . . . . There's what's been referred to as 'the consent battery claim' and then the informed consent claim." Dr. Allison argued that the battery claim was previously dismissed with prejudice on the ground that it was barred by the statute of limitations and that there was insufficient evidence as to the claim for lack of informed consent. In response, plaintiff argued that the battery claim should not relate back to her original complaint and that there was sufficient evidence to support the informed consent claim based on her testimony that Dr. Allison did not adequately describe on the consent form the procedure he was planning to perform and did not adequately disclose the risks of surgery on plaintiff's left breast. The plaintiff did not argue that the evidence supported any theory of negligence other than lack of informed consent.

During the discussion of jury instructions, the parties again represented to the Court that there were two theories of recovery at issue. Plaintiff stated "the facts support, I would argue, *both* a battery claim, no consent, and a lack of informed consent complaint . . . and therefore, I think we should be allowed to pursue one, *both* or the other." (Emphases added.) In fact, plaintiff expressed concern that since her negligence claim was based only on lack of informed consent, it might confuse the jury to use the term "negligence" instead of "informed consent" and noted that the finding instruction should "tell[] the jury what the *two actual claims are here*." (Emphasis added.) When plaintiff suggested that each instruction be changed to make it more clear to the jury that the term "negligence" referred to lack of informed consent, the trial court

16

concluded that since the jury would be instructed that Dr. Allison was negligent if he failed to obtain informed consent, it could "discern that negligence means informed consent or lack of informed consent."

In the issues instruction, the jury was instructed that there were only two theories upon which plaintiff could recover – informed consent and battery. Specifically, the jury was instructed as follows:

> The issues in this case are:
>
> (1) *Was the defendant negligent in that he did not have informed consent*?
> (2) If he was negligent, was his negligence a proximate cause of the plaintiff's injuries?
> _____
>
> (3) *Did the defendant commit a battery*?
> (4) If he committed a battery, was the battery a proximate cause of the plaintiff's injuries?
> _____
>
> (5) If the plaintiff is entitled to recover, what is the amount of her damages?
>
> On these issues, the plaintiff has the burden of proof.
>
> *Your decision on these issues* must be governed by the instructions that follow.

Therefore, the jury was clearly instructed to determine whether Dr. Allison was "negligent in that he did not have informed consent." The jury was not instructed to determine whether Dr. Allison was negligent upon any other ground. Instead, when the parties submitted the issues instruction to the court, they told the court that this instruction was plaintiff's new instruction revised to clarify the issue of negligence by inserting the language, "in that he did not have informed consent."

Furthermore, the only instruction the jury was given to enable it to make a finding of negligence was the instruction on the doctor's duty to obtain his patient's informed consent.

17

This instruction explained the legal duty to obtain a patient's informed consent before treatment, judged by the standard of a reasonably prudent practitioner, and told the jury that the doctor was negligent if he failed to perform this duty.[2]  Plaintiff offered the testimony of Dr. Weinberg to establish the standard of care in connection with her informed consent claim.  See *Mayr v. Osborne*, 293 Va. 74, 76, 795 S.E.2d 731, 738 (2017) (noting that unlike the tort of medical battery, "[f]ailure to abide by the standard of care regarding disclosures is quintessentially an action for negligence which will ordinarily call for expert testimony").  Plaintiff did not seek an instruction on any negligence theory other than informed consent, and no instruction given, other than the informed consent instruction, permitted the jury to find that Dr. Allison was negligent.[3]

---

[2] The jury was specifically instructed as follows:

A doctor has a duty to obtain his patient's informed consent before he treats her. Informed consent means the consent of a patient after a doctor has given the patient all information about the treatment and its risks that would be given to a patient by a reasonably prudent practitioner in the doctor's field of practice or specialty.  A doctor is not required, however, to tell a patient what she already knows or what any reasonably intelligent person would know.

If a doctor fails to perform this duty, then he is negligent and is liable for any injury proximately resulting from the doctor's treatment if you believe from the evidence that the patient would have refused the treatment if the doctor had disclosed the information.

[3] In fact, plaintiff withdrew the following jury instruction (Jury Instruction 11), based on 2 Virginia Model Jury Instructions – Civil No. 35.000, which would have instructed the jury as to the duty owed by a doctor under a separate negligence theory:

A doctor has a duty to use the degree of skill and diligence in the care and treatment of his patient that a reasonably prudent doctor in the same field of practice or specialty in this State would have used under the circumstances of this case. This is referred to as the standard of care.

If a doctor fails to perform this duty, then he is negligent.

18

## II.

Although the majority states that the evidence was sufficient "to support a finding that Dr. Allison negligently performed the surgery despite the plaintiff's withdrawal of her consent," the jury was not instructed to consider whether Dr. Allison was negligent in performing the surgery despite the plaintiff's withdrawal of her consent and was certainly not given a duty instruction on which it could base a finding of negligence under this theory. I disagree with the majority that the parties and the trial court unwittingly submitted this theory to the jury through the informed consent instruction.

First, I do not believe that any reasonable juror could have misunderstood the plain language of the informed consent instruction. The instruction told the jury that a doctor has a duty "to obtain his patient's informed consent before he treats her" and defined "informed consent" as "the consent of a patient after a doctor has given the patient all information about the treatment and its risks that would be given to a patient by a reasonably prudent practitioner in the doctor's field of practice or specialty." While the majority posits that this language may have led the jury to "improperly equate withdrawn consent with lack of informed consent," only a jury that completely ignored the plain language of the instruction could have done so.

Furthermore, even if the jury had misread the language of the instruction defining the doctor's duty to obtain the patient's informed consent, the instruction told the jury to find Dr. Allison liable "if you believe from the evidence that *the patient would have refused the treatment if the doctor had disclosed the information*." No reasonable jury could have interpreted that language to mean, instead, that it should find Dr. Allison liable if it believed from the evidence

19

that *the patient did refuse the treatment* or that *the patient withdrew her consent to treatment*.[4] The majority's speculation otherwise fails to give effect to the presumption that the jury followed the trial court's instructions. *See Gilliam v. Immel*, 293 Va. 18, 795 S.E.2d 458, 462-63 (2017) (stating that "[i]t is well established that we presume that the jury follows the instructions that are given"); *see also Medici v. Commonwealth*, 260 Va. 223, 229, 532 S.E.2d 28, 32 (2000) ("We presume that jurors followed a court's instruction, unless the record plainly shows otherwise.") (citing *Spencer v. Commonwealth*, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990), *overruled on other grounds by Townsend v. Commonwealth*, 270 Va. 325, 333, 619 S.E.2d 71, 76 (2005)).

In any event, as the majority holds, the informed consent instruction should never have been given to the jury. Therefore, the majority is remanding this case to afford the plaintiff a new trial on a theory purportedly contained within an instruction that was improperly submitted to the jury in the first place. Although the record demonstrates that plaintiff only intended to present one negligence theory to the jury, even if we assume that plaintiff did intend to submit a second negligence theory to the jury, she bore the responsibility for submitting an appropriate jury instruction that contained this theory. *See Honsinger v. Egan*, 266 Va. 269, 275, 585 S.E.2d 597, 601 (2003) ("In a civil trial, the burden is on the parties to furnish the trial court with proper and appropriate instructions that address their respective theories of the case."). No credible argument can be made that plaintiff satisfied her burden of furnishing the trial court with a proper instruction on a separate negligence theory based on withdrawn consent.

---

[4] The informed consent instruction was based on 2 Virginia Model Jury Instructions – Civil No. 35.080. The language of this instruction is a clear and concise statement of the law of informed consent in Virginia. *See, e.g., Mayr v. Osborne*, 293 Va. 74, 85, 795 S.E.2d 731, 738 (2017); *Tashman v. Gibbs*, 263 Va. 65, 73-76, 556 S.E.2d 772, 777-79 (2002). After this decision, the future utility of this instruction is unclear, particularly since the majority has not offered the bar any suggestion as to how the instruction might be revised so as not to create the ambiguity the majority posits and so as not to conceal a separate theory of negligence.

III.

In sum, the only negligence claim tried in this case was plaintiff's claim that Dr. Allison did not obtain her informed consent. But as the majority opinion concludes, that claim should not have been presented to the jury. Therefore, I disagree with the majority that this case should be remanded for a "retrial" on plaintiff's "original negligence theory." There was no other negligence theory presented to the jury and this Court should not construct one for the plaintiff in order to give her a "second bite at the apple." Since Dr. Allison has prevailed on the only two theories that were presented to the jury, I would hold that he is entitled to final judgment in his favor.