COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:    Chief Judge Decker, Judges Ortiz and Chaney
Argued by videoconference


WAT KAMPUCHEA KROM, INC., ET AL.

v.        Record No. 1397-24-4

EMILY PIN, ET AL.                                    MEMORANDUM OPINION[*] BY
                                               CHIEF JUDGE MARLA GRAFF DECKER
                                                         DECEMBER 2, 2005
EMILY PIN, ET AL.

v.        Record No. 1399-24-4

WAT KAMPUCHEA KROM, INC., ET AL.


                    FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                               Petula C. Metzler, Judge

               David D. Armistead, III (Bret Giaimo; PJI Law PLC, on briefs), for
               Wat Kampuchea Krom, Inc., Ngan Thach, Sharon Duong, and
               Horn Yim.

               Benjamin Ader (Tate Bywater, on briefs), for Emily Pin, Khieng
               Thung, San Yos, Say Ieng, Vourrit Keosann, Du Kim, and Bopha
               Chhouk.


       These cases arise from a dispute between Emily Pin, Khieng Thung, San Yos, Say Ieng,

Vourrit Keosann, Du Kim, and Bopha Chhouk (the plaintiffs) and Wat Kampuchea Krom, Inc., a

Buddhist temple, and Sharon Duong, Horn Yim, and Ngan Thach, individual members of the

board of directors (Wat Kampuchea).  The plaintiffs filed a complaint seeking, among other

things, a declaration by the circuit court that they were members of the temple.

_____

       [*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

These cases are before this Court as interlocutory appeals of the circuit court's decisions denying both Wat Kampuchea's motion to dismiss certain claims for lack of subject matter jurisdiction and the plaintiffs' motion for summary judgment on certain claims. The appeals are consolidated for purposes of argument and decision. For the reasons below, the Court rules in favor of Wat Kampuchea, reversing in part and affirming in part.

BACKGROUND

I. Legal Proceedings

The plaintiffs, attendees of the temple, sued Wat Kampuchea. The claims largely related to how the board oversaw the governance of the temple.

The plaintiffs asserted nine claims, five of which are relevant to the current appeal. Claim I sought a declaratory judgment asking the circuit court for a judicial determination of the members of Wat Kampuchea. Claim II asked the court to hold an annual meeting, presided over by an appointed judicial officer. Claim III sought a declaratory judgment providing that the members of the temple could vote to determine the size of the board of directors, elect the board, and amend the bylaws. Claim VI sought an order requiring Wat Kampuchea to provide copies of all corporate records to the plaintiffs. And Claim IX, the last claim at issue, alleged that the board breached its fiduciary duties. These claims all turned on the ability of the plaintiffs to successfully establish their membership.[1]

Wat Kampuchea moved to dismiss these five claims for lack of subject matter jurisdiction. It argued that, under the definition of members set forth in the bylaws, the court was not constitutionally permitted to determine which individuals were members because doing so would require it to delve into religious matters. At the same time, the plaintiffs sought summary

---

[1] The plaintiffs asserted that, combined, they donated more than $300,000 to the temple and that Pin received a certificate of membership. They claimed they were members because they met the definition for membership provided in the organization's bylaws.

judgment on four of their claims, countering that the definition of members set forth in the bylaws was not controlling because the bylaws were invalid.

After a hearing, the circuit court denied both motions. In denying the motion to dismiss, it held that "at this stage . . . the matter can be decided solely on the basis of neutral principles of law." The court denied the motion for summary judgment due to "material facts genuinely in dispute." It certified its rulings for an interlocutory appeal under Code § 8.01-675.5. This Court granted the parties' respective petitions for appeal.

Wat Kampuchea now raises three assignments of error. It contends that the circuit court erred by failing to grant its special plea as to subject matter jurisdiction, arguing that adjudication of the five counts of the amended complaint at issue is barred by the ecclesiastical-abstention doctrine as well as constitutional protections of freedom of religion. It also suggests that the circuit court incorrectly allowed the plaintiffs to take "the position that the bylaws were procedurally illegitimate," as well as by considering the merits of the argument, since it was contradicted by the argument advanced in its pleadings.

The plaintiffs argue that the circuit court erred by denying their motion for summary judgment on claims I, II, III, and VI. They contend in part that they established their status as members of the temple.

## II. Governing Documents

The temple was started by Cambodian refugees. Its articles of incorporation provided that the "management of . . . corporat[e] affairs shall be vested in [a] Board of Directors." The articles of incorporation identified the members of the first board and provided that "[t]he board directors shall elect their successor[s]."

The bylaws detailed who could be a member of the temple and who could sit on the board of directors. They also provided the structure, notice requirements, and procedures for annual and special board meetings. Further, the bylaws established corporate officer positions.

All corporate officers had to be elected by the board and were required to be members of the temple. Under the bylaws, membership was "open to all Cambodians[ and] Cambodian-American adults or their descendants living in the United States and abroad who support Kampuchea Krom Temple, the [o]rganization['s] [m]ission and [o]bjectives." The bylaws further provided that "[m]embers must respect the principles of Buddhism, maintain and preserve Khmer culture, and support WAT KAMPUCHEA KROM, INC.'S core mission." Although the bylaws did not describe the temple's "mission," the articles of incorporation explained that the "objects and purposes for which" it was "established" were "to maintain culture, [and] to mutually assist, promote, foster and afford opportunity for religious[ and] social intercourse[ and] intellectual improvement for its members."

A two-thirds vote of a quorum of the board was required to amend the articles of incorporation and bylaws. Neither the articles of incorporation nor the bylaws granted members the authority to make amendments.

It is against this backdrop that the Court considers these appeals.

ANALYSIS

I. Governing Legal Principles

Circuit court decisions on motions for summary judgment are subject to de novo review. *Atl. Korean Am. Presbytery v. Shalom Presbyterian Church of Wash., Inc.*, 84 Va. App. 1, 19 (2025). When reviewing such a decision, the appellate court "appl[ies] 'the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences

- 4 -

are forced, strained, or contrary to reason.'" *Id.* (quoting *Smith Dev., Inc. v. Conway*, 79 Va. App. 360, 372 (2024)). Similarly, "[w]hether the doctrine of ecclesiastical abstention bars [a] claim . . . presents a question of law that we review de novo." *Episcopal Diocese of S. Va. v. Marshall*, 81 Va. App. 255, 265 (2024).

Plain and simply, "civil courts are not a constitutionally permissible forum for a review of ecclesiastical disputes." *Bowie v. Murphy*, 271 Va. 126, 133 (2006) (quoting *Jae-Woo Cha v. Korean Presbyterian Church*, 262 Va. 604, 610 (2001)). For this reason, the Supreme Court of Virginia "has treated the ecclesiastical-abstention doctrine as a question of jurisdictional significance." *Marshall*, 81 Va. App. at 271. "[I]ssues of religious governance are unquestionably outside the jurisdiction of the civil courts." *Id.* (quoting *Protestant Episcopal Church v. Truro Church*, 280 Va. 6, 26 (2010)). "In other words, '[a]s a general rule, courts lack subject matter jurisdiction to resolve issues of church governance and disputes over religious doctrine.'" *Id.* (alteration in original) (quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 51 (2018)). So "a court asked to resolve . . . a dispute" between a religious institution and its members over civil or property rights must first determine "whether its resolution will project the fact-finder into . . . a 'religious thicket.'" *Reid v. Gholson*, 229 Va. 179, 187 (1985) (quoting *Serbian E. Orthodox Diocese for U.S. & Can. v. Milivojevich*, 426 U.S. 696, 719 (1976)).

These well-established principles guide our analysis of the parties' assignments of error.[2]

---

[2] In the plaintiffs' opening brief, the argument section supporting the first assignment of error, challenging the denial of their motion for summary judgment on Claim I, does not include any references to legal authority. We assume without deciding that this assignment is not procedurally barred by Rule 5A:20(e) because the issue must be addressed on its merits to resolve the remainder of the assignments of error. *See generally McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (assuming without deciding that an issue was properly before the Court because addressing it on the merits provided the best and narrowest ground for resolution).

## II. How Members Are Defined

At the center of this case is the dispute over whether the plaintiffs are members of the temple. Wat Kampuchea asserts that membership is defined by the bylaws. The plaintiffs take the opposing position that, under *Reid v. Gholson*, the bylaws are not binding because they were adopted without a majority vote.

In *Reid*, 229 Va. at 192, the Supreme Court of Virginia affirmed an order appointing a "judicial officer to oversee" a meeting at a congregational church. There, the church had no constitution or bylaws and had been "governed by majority vote of its members." *Id.* at 181. Certain members filed suit after being excluded from church meetings, and the Supreme Court concluded that these individuals sought only the application of "simple and fundamental principles of democratic government," which could be judicially enforced "without any danger of entering a 'religious thicket.'" *Id.* at 189-90.

In making this ruling, the Court distinguished congregational religious institutions from hierarchical ones. *Id.* at 188-89. It defined a congregational church as an autonomous one "governed by the will of the majority" in each individual church. *Id.* at 189; *see Protestant Episcopal Church*, 280 Va. at 25. Although a congregational church can adopt bylaws, the bylaws themselves "must be enacted by majority vote." *Reid*, 229 Va. at 189. "And in the absence of such voluntarily[ ]adopted rules, each such congregation functions as a pure democracy." *Id.* The Supreme Court held that "[a] member of a congregational church" can enlist "the aid of [a] court in protecting his civil and property rights" but only as to "the simple and fundamental principles of democratic government which are universally accepted in our society." *Id.* at 189.

As delineated by our Supreme Court, a hierarchical church, by contrast, is composed of multiple nonautonomous congregations "subject to control by [a] super-congregational bod[y]."

*Protestant Episcopal Church*, 280 Va. at 13 (quoting *Baber v. Caldwell*, 207 Va. 694, 698 (1967)). And that body "customarily . . . establish[es its] own rules for discipline and internal government" that apply to all participating congregations. *Reid*, 229 Va. at 188. "[C]ivil courts will treat a decision by a governing body or internal tribunal of a[] hierarchical church as an ecclesiastical determination constitutionally immune from judicial review." *Id.* at 189.

Here, the plaintiffs reason that the temple, as a congregational entity, must be governed by the will of the majority and that its bylaws, which were not adopted by a majority of its members, are therefore invalid. In Wat Kampuchea's view, the circuit court could not consider this issue because it was not raised by the pleadings. The plaintiffs disagree, countering that it is encompassed by their amended complaint.

A complaint "shall state the facts on which the party relies in numbered paragraphs[] and . . . clearly inform[] the opposite party of the true nature of the claim." *Allison v. Brown*, 293 Va. 617, 624 (2017) (quoting Rule 1:4(d)). "Stated another way, a pleading must be 'drafted so that [the] defendant cannot mistake the true nature of the claim.'" *Id.* (alteration in original) (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)).

In their amended complaint, the plaintiffs asserted—and Wat Kampuchea agreed—that the temple's "Articles of Incorporation and Bylaws . . . [were] duly adopted by the Board." The plaintiffs attached the bylaws to the complaint. They specifically recited the bylaws for the proposition that "[m]embership [is] open to all Cambodians, Cambodian-American adults or their descendants . . . who support Kampuchea Krom Temple, the [o]rganization['s] [m]ission and objectives." The plaintiffs argued they were members because they met that definition.

A careful reading of the amended complaint reflects that it does not assert that the bylaws were improperly adopted or nonbinding, even though they were adopted by the board and not a majority of its members. We recognize the plaintiffs' allegation in the amended complaint that

as a congregational church, the temple's bylaws must be adopted by a majority of its members and, further, courts are authorized to oversee its governance. Even so, the amended complaint specifically notified Wat Kampuchea that the plaintiffs intended to establish they were members *as defined by the bylaws*. The amended complaint did not otherwise notify Wat Kampuchea that they would alternatively attempt to establish their membership by calling into question the validity of the bylaws themselves. *See generally* Rule 1:4(k) (permitting pleading "alternative facts and theories of recovery"). Even at the hearing, when the plaintiffs claimed that the bylaws were invalid, they did not propose an alternative method for determining membership.

"The law in Virginia is well established that a court cannot enter judgment based on facts that are not alleged in the parties' pleadings . . . ." *Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 86 (2011). "[E]very litigant is entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense. . . . The issues in a case are made by the pleadings . . . ." *Id.* (second alteration in original) (quoting *Jenkins v. Bay House Assocs., L.P.*, 266 Va. 39, 43-44 (2003)).

Based on the amended complaint, the plaintiffs' claim regarding membership was limited to the theory that they qualified under the bylaws as members. The absence of any allegation that the bylaws were not binding on this point precluded the circuit court's consideration of that assertion. *See id.* As a result, we accept the definition of members provided by the bylaws and as set forth in the amended complaint.

### III. The Ecclesiastical-Abstention Doctrine

The plaintiffs suggested that they meet the requirements for membership as defined by the bylaws. Wat Kampuchea responded that the plaintiffs were not members because they did not meet those requirements because they did not support the temple's mission or objectives.

The question before us is whether courts can resolve this question without violating the ecclesiastical-abstention doctrine. If not, the issue is barred.

The First Amendment to the Constitution of the United States provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." *See also* Va. Const. Art. 1, § 16. "[C]onstitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 528 (2023) (quoting *Reid*, 229 Va. at 187). "[T]hose provisions," in addition to restricting congressional action, likewise "bind the States under the due process clause of the Fourteenth Amendment." *Marshall*, 81 Va. App. at 266 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940)). "[T]he right of churches and other religious institutions to decide matters 'of faith and doctrine' without government intrusion" is accordingly carefully protected. *Id.* at 266-67 (quoting *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020)).

"The independence of religious institutions in matters of 'faith and doctrine' is closely linked to independence in . . . 'matters of church government.'" *Our Lady of Guadalupe*, 591 U.S. at 746 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 186 (2012)). "That independence does not give religious institutions 'general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission.'" *Marshall*, 81 Va. App. at 268 (quoting *Our Lady of Guadalupe*, 591 U.S. at 746). Part of that autonomy, for example, "is the selection of the individuals who play certain key roles" within the religious institution. *Id.* (quoting *Our Lady of Guadalupe*, 591 U.S. at 746). "Secular courts must also steer clear of 'church disputes over church polity and church administration.'" *Id.* at 270 (quoting *Serbian E. Orthodox*, 426 U.S. at 710).

To protect this demarcation, courts follow well-recognized legal principles when "asked to resolve . . . a dispute" involving a religious institution. *Reid*, 229 Va. at 187. Generally in such cases, "[t]he threshold inquiry for a court . . . must be whether . . . resolution" of the dispute "will project the fact-finder into . . . a 'religious thicket.'" *Id.* (quoting *Serbian E. Orthodox*, 426 U.S. at 719). If "church property and civil rights disputes can be decided without reference to questions of faith and doctrine, there is no constitutional prohibition against their resolution by civil courts." *Id.* at 187; *see also Jones v. Wolf*, 443 U.S. 595, 602-03 (1979) (holding that a secular court may adjudicate controversies arising in religious settings if it can do so based on "neutral principles of law" that are "completely secular in operation"). But the court's analysis must sound "in purely secular terms" and not turn or even "rely on religious precepts." *Marshall*, 81 Va. App. at 271 (quoting *Jones*, 443 U.S. at 604). "In essence, for this Court to apply 'neutral principles,' the parties must plead a secular dispute at [the] heart [of the matter] before it . . . ." *Atl. Korean Am. Presbytery*, 84 Va. App. at 44 (quoting *Pure Presbyterian*, 296 Va. at 53). A secular dispute qualifies as one in which a court is not required to "decide an ecclesiastical question" and one that does not contain any "'*underlying controversies* over religious doctrine.'" *Id.* (quoting *Pure Presbyterian*, 296 Va. at 54 (emphasis added)).

Here, the fundamental issue raised in the parties' competing motions centers on whether the plaintiffs were members of the temple. To that end, the plaintiffs asked for a judicial determination regarding who qualifies as a member.

Examination of the bylaws, however, demonstrates that determining who qualifies as a member is a fundamentally religious endeavor. Among other things, the bylaws provide that membership is "open" to those "who support Kampuchea Krom Temple, the [o]rganization[']s] [m]ission and [o]bjectives." According to the temple bylaws, "[m]embers must *respect the principles of Buddhism*, maintain and preserve Khmer culture[,] and support [the temple's] core

- 10 -

mission." (Emphasis added). The plaintiffs' amended complaint itself asserts that the temple's "primary purpose is to promote the practice and study of the religion of Buddhism."[3] A secular judicial officer cannot determine who among the plaintiffs meets those criteria without engaging with and relying on religious precepts. *See Marshall*, 81 Va. App. at 271; *see also Bouldin v. Alexander*, 82 U.S. 131, 139-40 (1872) (holding that secular courts "cannot decide who ought to be members of the church"); *Garrick v. Moody Bible Inst.*, 95 F.4th 1104, 1117 (7th Cir. 2024) ("Religious groups can 'define their own doctrine, membership, organization, and internal requirements without state interference.'" (quoting *Demkovich v. St. Andrew the Apostle Par. Calumet City*, 3 F.4th 968, 975 (7th Cir. 2021) (en banc))); *Lippard v. Diamond Hill Baptist Church*, 821 S.E.2d 246, 249 (N.C. Ct. App. 2018) (citing *Bouldin*, 82 U.S. at 139-40); *Mt. Olive Baptist Church v. Williams*, 529 So. 2d 972, 973 (Ala. 1988) (holding that courts cannot "determine the eligibility of church members to vote"). As a result, we hold that the court cannot reach the plaintiffs' challenge.

In reaching this holding, we reject the plaintiffs' proposition that *Reid v. Gholson* authorizes courts to determine their status as members of the temple. Under the specific circumstances of that case, the Supreme Court affirmed the appointment of a judicial officer to oversee a church meeting. *Reid*, 229 Va. at 192-93. But the fundamental principle remains that courts can intervene in church government only if the dispute does not involve any questions of religious doctrine. *Id.* at 189-90. In *Reid*, the Court held that the appointment of the judicial officer was constitutional because as members of a congregational church, the appellees were entitled to court protection of their due process rights based on purely "neutral principles of law."

---

[3] The temple's articles of incorporation provide that its "objects and purposes" are "to maintain culture, [and] to mutually assist, promote, foster and afford opportunity for religious[ and] social intercourse, [and] intellectual improvement for its members."

- 11 -

*Id.* at 189. Unlike in *Reid*, the plaintiffs' requested court intervention here does not require application of only neutral principles. Therefore, *Reid* does not compel a different outcome.

For these reasons, the circuit court erred by not granting Wat Kampuchea's plea to dismiss claims I, II, III, VI, and IX because secular courts cannot resolve those claims or grant plaintiffs' requested relief without becoming entangled in a thicket of religious policy, administration, and practice.

CONCLUSION

The plaintiffs' argument that the bylaws are invalid is foreclosed by the failure of the amended complaint to make this allegation. The bylaws govern how the temple determines its members. The circuit court erred by denying Wat Kampuchea's motion to dismiss five of the plaintiffs' claims for lack of subject matter jurisdiction because resolution of these claims on their merits would require entanglement in questions of religious faith and doctrine. For the same reason, the circuit court did not err by denying the plaintiffs' motion for summary judgment. Consequently, we reverse in part and affirm in part. The case is remanded for further proceedings consistent with this opinion.

*Reversed in part, affirmed in part, and remanded.*